WINTER vs SUMVALT.

In an action of slander the words charged to have been spoken were, "you are a rogue, and I can prove that you cheated M S out of 100 dollars"——Held, that the words were not in themselves actionable.

APPEAL from *Baltimore* county court. This was an action of *slander*, brought by the appellee against the appellant. The slanderous words charged in the declaration were these: "You, (meaning the plaintiff,) are a rogue, and I, (meaning himself the defendant,) can prove that you, (meaning the plaintiff,) cheated *Mathias Sitler*, (meaning one *Mathias Sitler* of the city of *Baltimore*,) out of a hundred dollars." The general issue was pleaded, and there was a verdict for the plaintiff for one cent damages. *Motion*, and reasons in arrest of judgment. 1. Because the words spoken had no reference to the plaintiff in the way of his trade or business. 2. Because they were not in themselves actionable. The county court overruled the motion, and rendered judgment on the verdict for the plaintiff. The defendant appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J.

*Kell, Winder, and M'Mechen*, for the Appellant, cited 1 *Com. Dig.* tit. *Action*, (F. 7,) 268. *Ludwell vs Hole*, 1 *Stra.* 696. S. C. 2 *Ld. Raym.* 1417. *Davis vs Miller*, 2 *Stra.* 1169. *Wake vs Chapman*, *Hardres's Rep.* 83 and *Cockaine vs Hopkins*. 2 *Lev.* 214.

*Scott*, for the Appellee.

JUDGMENT REVERSED, AND JUDGMENT ON THE VERDICT ARRESTED.

---

COLVIN vs. WILLIAMS.

The sale of bank stock is within the statute of frauds of 29 Car II, ch 3. A broker who disposes of such stock for another, is to be considered the agent of both the owner and the purchaser.

APPEAL from *Baltimore* County Court. *Assumpsit*. The declaration contained *five* counts; the *first*, that the plaintiff, (the appellee,) was possessed of two shares of stock of the Bank of *Baltimore*, of the value of $1000, of which the defendant, (the appellant,) had notice, and in consideration that the plaintiff, at the special instance and request of the defendant, would sell to him the said two shares, and that the plaintiff would, in pursuance of such sale, transfer the stock to the defendant on, &c. he undertook, and then and there promised the plaintiff to pay him the sum of £900, it being the rate or sum of $450 for

each share of the stock, when requested. The plaintiff averred, that he, confiding in the promise and undertaking of the defendant, afterwards, &c. did sell to the defendant the said stock, and that the plaintiff hath always been ready, and still is ready, to transfer the said stock in due form of law to the defendant. The *second* count, general *indebitatus assumpsit*, for two shares of stock, &c. sold by the plaintiff to the defendant. The *third* count, *quantum meruit*, for two shares of stock, &c. The *fourth* count, similar to the *first* count, with an averment that he offered to transfer the stock, &c. which the defendant refused to accept, &c. The *fifth* count was a similar count, omitting the averment of an offer to transfer, &c. The general issue pleaded. At the trial the plaintiff offered evidence, that the defendant, having applied to *Thomas Barklie*, who was a known public broker residing and dwelling in the city of *Baltimore*, and with whom he was in the habit of transacting business as a broker, to inform him whenever stock of the Bank of *Baltimore* was at the price of $450 per share, as he wished to become a purchaser, but did not specify the number of shares he wished to purchase; and that a certain *Benjamin Williams*, *James Cox*, and the plaintiff, did afterwards, on the 22d day of February 1804, place with *Barklie* a quantity of shares of stock of the said bank to the number of ten, or upwards, and did authorise *Barklie* to make sale thereof at the price of $450 per share; that *Barklie*, being thus authorised, did make out the bill of parcels, a copy whereof is as follows, viz.

"*Balto.* 22 Feb. 1804.

Mr. *Richard Colvin* Bot. of *Thomas Barklie*, Broker, ——Shares of *Baltimore* Bank Stock a 450 pr. Share, to be transferred on the 23 instant. $——."

And did send the same by *W. Boyce* his clerk, to the defendant, who received the said bill of parcels, and was informed he might have what shares he wanted; and after looking over his bank book to see what amount of money he had in bank, the defendant filled up the blank in the bill of parcels with the number seven, and carried out on the bill of parcels the amount of the seven shares in money, which he entered thereupon, and having showed to *Boyce* the bill of parcels thus filled up and extended, kept the same in his possession. The plaintiff also proved, that

five of the shares mentioned in the bill of parcels were the property of *Benjamin Williams,* and that the remaining two shares were the property of the plaintiff, and that at the time of the delivery of the bill of parcels to the defendant, *Barklie* did not inform the defendant to whom the seven shares belonged, but that *Barklie,* on the 23d of February 1804, informed him that five of the shares were the property of *Benjamin Williams,* and the remaining two shares the property of the plaintiff; and that *B. Williams* and the plaintiff, on that day, offered to transfer to the defendant the seven shares; that is, the plaintiff his two shares, and *B. Williams* his five shares, upon the respective payment of $450 for each of the shares; but the defendant refused to pay for the seven shares, declaring that he would neither accept of a transfer of the said shares, nor pay for the same. That the plaintiff was at that time a stockholder of two shares in the said bank, and *B. Williams* was at that time also a stockholder of five shares, and that the plaintiff did tender to the defendant the two certificates of his two shares, and *B. Williams* the five certificates of his five shares, on the morning of the 23d of February 1804, which the defendant refused to receive. The plaintiff then moved the court to direct the jury, that this testimony was sufficient to maintain the *first, fourth* and *fifth* counts of the plaintiff's declaration. The court, (*Nicholson,* Ch. J. and *Hollingsworth,* A. J.) gave the direction. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The case was argued before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J.

*W. Dorsey,* for the Appellant. 1. The plaintiff below ought not to have recovered on the *first* and *fifth* counts of his declaration, and it is doubtful whether he could recover on the *fourth* count. In the first count it is not stated that there was a *tender* of the shares. 2. By the statute of frauds the contract was not binding, unless part of the goods was received, or some note or memorandum in writing given. There must be a contract signed by the party to entitle the plaintiff to recover. Here is a mere sketch of a writing, neither filled up, nor the shares delivered. It is clear that the requisitions of the statute have not been complied with. The intention of that statute was to

1810.

Colvin
vs
Williams

prevent verbal agreements from being set up. It may be said that *Barklie* was the agent of both parties; and if so, yet the agreement is not such as the statute contemplates. It does not state the number of shares, although the price is stated. This is a material omission. 3. If the agreement is obligatory, yet there is a material variance between the declaration and the proof. The evidence is the sale of *seven* shares, and the declaration is for *two* shares. 4. There was no objection that *Barklie* was a broker, and he might have sued for the seven shares. If this action is correct, seven actions might have been brought; and if this could be done, the statute of frauds would be evaded. There is no evidence on the bill of parcels who the seller was. The action ought to have been in the name of *Barklie*.

*Harper*, for the Appellee. Although in some cases the agent may maintain an action, yet in every such case the principal or owner may sue. There is a double remedy given. The usual mode is for the owner to sue in his own name, and this is done every day. There are many sales where the principal is not known in the transaction, where it is effected by an agent or vendue master. If a note is given to the agent, he may sue, but if there is no note, the principal can sue. This is necessary in all sales by agents. *Barklie* is known to be a broker, and there being no note in this case, the agent, could not sue. It is a special contract, made through the agent, for the respective shares. The shares are not jointly the property of all the owners of shares put in the hands of a Broker for sale, and a joint action could not be maintained. It was a several interest in the whole. If there had been but *one* share, then it would have been the property of all. This is the case of several persons who happen to employ the same agent to sell their stock. In the proof it appears, that at the same time there was a special contract for other shares sold to the same person. It is a special contract with the plaintiff for two shares, and with *B. Williams* for five shares, neither having an interest in the shares of the other. This is not a contract within the statute of frauds. It is for the sale of shares of stock, and is for a kind of property which is not embraced by that statute. The 17th *section* of the statute

says, that "no contract for the sale of any *goods, wares or merchandises;*" shall be good, &c. The question is, whether bank stock was contemplated by that statute? It speaks of *goods,* in contradiction to *real estate.* Would it embrace *lease-hold estate?* The term *goods* is to be taken in a restricted sense. If the word *goods* was alone used it might be doubtful, but the three words are to be taken together, and they were not intended to apply to stock in a Bank. This point has not been finally settled, and is open for decision. The judges in *England* are divided in opinion. 1 *Com. on Contr.* 88 to 91. This was a contract executed— There was a complete sale, and such an one as the defendant could be enforced to perform in a court of equity. The formality was only to be complied with, but the sale was complete, and the stock was vested without a delivery. The sale of a horse at a stable is good without a delivery, and an action may be brought for the horse, if there is no delivery. The defendant had such a right which he could enforce the performance of. The offer to sell was accepted and agreed upon. It was a complete sale. The transfer could only be made in a particular way, and was not a condition precedent to the payment of the money. If the sale of bank stock is within the statute, then here is a note or memorandum in writing. The bill of parcels was in the hand-writing of *Barklie,* the agent of both parties. The defendant filled up the blanks, and though he put it in his pocket, will it be said that it would bind the plaintiff and not the defendant? The defendant, by filling up the blanks, made it his writing. The statute does not say any thing about a *signature* or a *delivery.*

The Court said, that the sale of bank stock is within the statute of frauds; and that *Barklie* was the common agent of both the appellee and appellant.

JUDGMENT AFFIRMED.