# AUSTIN, NICHOLS & CO., Inc.,

## vs.

# RUFUS R. LINGO, Trading as R. D. Lingo & Co.

*Sale of Goods—Action for Non-Delivery—Authority of Broker—Evidence.*

On an issue as to whether certain brokers, through whom a contract was made for the sale of certain canned goods, were the agents of the buyers for the purpose of giving shipping instructions to the seller, *held* that there was evidence of such agency sufficient to go to the jury. pp. 189-192

That facts as to which there was no evidence were inserted in a prayer of defendant which was granted, *held* not cause for reversal, the jury being required thereby to find facts which were not essential to the defendant's right to a verdict. p. 192

In an action for the non-delivery of goods sold through a broker, *held* that evidence as to conversations between the broker's representative and the vendor, showing the circumstances under which the contract of sale was made, was admissible.

p. 192

In an action for the non-delivery of goods sold through a broker, *held* that a letter written to such broker by another broker, notifying the former of plaintiff's desire to purchase goods of the character sold was admissible. p. 193

*Decided March 16th, 1920.*

Appeal from the Circuit Court for Baltimore County (Duncan, J.).

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Stockbridge, JJ., Burke, J., not participating in the decision by reason of his resignation.

*John L. G. Lee,* with whom were *Elmer J. Cook, J. Edwin Webster* and *E. W. H. Harlan* on the brief, for the appellant.

*T. Scott Offutt* and *Harry S. Carver,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment for costs in favor of the appellees, defendants below, in an action brought against them by the appellants.

Austin, Nichols & Co., the appellants, in 1916, were engaged in the wholesale grocery business in New York and other cities.

On Feb. 4th, 1916, U. H. Dudley & Co., brokers, of New York, wrote Wm. E. Robinson & Co., brokers of Belair, Maryland, that they had, in Austin, Nichols & Co., a purchaser for "1,800 cases of No. 3, Standard Tomatoes of 1916 packing at 80c per dozen, f. o. b. Maryland Factory," and in their letter further stated that "they (Austin, Nichols & Co.) want us to be sure and get them some reliable pack. They want inserted on the contract 'option of buyer's label with regular allowance.' They may take part under packers' label and part under their brand." There is found in the record as the result of this communication the following bought and sold note or statement, signed, in the body of it, by E. W. Gray & Sons, the "accepted seller":

"Bel Air, Md., 2/5/16.

"No. 6612.

"W. E. Robinson & Company, Brokers in Canned Goods, sold to Austin, Nichols & Co., New York, N. Y., for account of E. W. Gray & Sons, Dagsboro, Del., 1,800 c/s No. 3 std. tomatoes at 80c. per doz.

"Brand packer's labels, privilege buyer's labels, usual allowance for same. Delivered f. o. b. Dagsboro, Del., Pa. R. R. Shipment as soon as packed during packing season of 1916.

&ast;          &ast;          &ast;          &ast;          &ast;

"Terms: Cash less 1½%.

"W. E. Robinson & Co. to bill and collect for account of seller.

"Remarks: If buyer's labels are to be used, they are to be shipped to: E. W. Gray & Sons, Dagsboro, Del., Pa. R. R.

"HWT.M.

"Accepted: Buyer............

"Accepted: Seller, E. W. Gray & Son.

"Buyer's Copy: (duplicate sent to seller).

"Future Contract.

"W. E. Robinson & Co.,<br>"Brokers."

This bought and sold note, though dated Feb. 5th, was not, as stated by Gray, signed by his firm for several months thereafter. E. W. Gray & Sons not only sold to Austin, Nichols & Co., through Wm. E. Robinson & Co., brokers, tomatoes of the pack of 1916 to be delivered in the future, but likewise sold to other parties; and they also contracted with farmers in the vicinity of their canning house to grow for them tomatoes upon 150 acres of land in the aggregate.

Sometime in the spring or early summer, before the packing season opened, E. W. Gray & Sons decided not to engage in the canning business for the year 1916 and so entered into a contract with Scott & McKabe by which the business for that year was to be conducted by the latter. Later Scott & McCabe, they having abandoned the idea of engaging in the canning business, entered into a contract or agreement with R. D. Lingo & Co. by which the latter agreed to operate the canning plant taken over by them from E. W. Gray & Sons. The details of the agreement or contract between R. D. Lingo & Co. and Scott & McKabe, like the one between the latter and E. W. Gray & Sons, are not shown by the record, but it seems that, by the contract between them, R. D. Lingo & Co. was to take over the contracts made by E. W. Gray & Sons with the farmers which had passed to Scott & McKabe from E. W. Gray & Sons under their agreement.

The record discloses that on the 11th of August, 1916, J. Harry Cain, a representative of Wm. E. Robinson & Co., visited Dagsboro, Del. He first called upon E. W. Gray, of the firm of E. W. Gray & Sons, and with him went to the office of R. D. Lingo & Co. and there saw R. D. Lingo. The object of Cain's visit to Dagsboro, as clearly shown by the record, was to look after the fulfillment of the contracts for the sale of tomatoes purchased through W. E. Robinson & Co. from E. W. Gray & Sons, who, as known by W. E. Robinson & Co., were not to engage in the business of canning tomatoes that season and whose plant had passed into the hands of others.

Cain testified that E. W. Gray & Sons had also sold 1,200 cases of tomatoes to Poole & Co., of Boston, and 600 cases to Williams Bros. & Co., of Wilkes-Barre, Pa., in addition to the 1,800 cases sold Austin, Nichols & Co., making in all 3,600 cases.

E. W. Gray & Sons admitted that they signed the contracts with Austin, Nichols & Co. and Poole & Co., but denied the execution of the alleged contract with Williams Bros. & Co.

Prior to the time of Cain's visit to Dagsboro, that section of Delaware had been visited by heavy rains which had greatly damaged and lessened the growing tomato crop. Mr. Lingo knowing the effect of the rains thereon, was of the opinion that the amount of raw tomatoes to be received from the farmers under their contracts with E. W. Gray & Sons, reasonably estimated, would not can more than 3,000 cases, and when sought by Cain to take over contracts aggregating more than 3,000 cases, he positively refused to do it. Lingo testified that in the conversation with Cain, in the presence of Gray, at Dagsboro, Aug. 11th, 1916, after he had said he would not take over contracts aggregating more than 3,000 cases, Cain turned to him and said, "Will you sign for 3,000 cases?" and he replied, "If these people turn over the raw material I will fill 3,000 cases and I will ship them at your order to anybody you say," and he said, "All right."

Cain then said, "I have but one blank form, you sign that up and I will draw up another one and sign up that one." Lingo said, "I do not like to do that, you go home and make these contracts out and send them to me, you sign two of them and send them to me, and I will sign two and send them back to you," and Cain said, "Well, now, Mr. Lingo, Mr. Robinson sent me down here to get this business straightened up, we have had a good bit of trouble with it, first with Mr. Gray and then with Scott & McKabe and now comes you, and nobody seems responsible and I want to show my boss that I did something." Lingo then said, "Mr. Cain, if that is the way you look at it, I will do that much to accommodate you, and you will send me copies of that contract at once, will you not?" and he said, "I certainly will," and "I signed up these two contracts for 3,000 cases, 1,800 to Austin, Nichols & Co. and 1,200 to the Boston man, Poole."

It was admitted by Mr. Cain that he tried to get Lingo to take over the alleged contract made by E. W. Gray & Sons for the sale of 600 cases of tomatoes to Williams Bros. & Co., and that he refused to do it. He, however, would not admit, though testified to by both Lingo and Gray, that Lingo refused to take over more than 3,000 cases, but when pressed for an answer finally said, "Well, that was the aggregate amount of the tomatoes sold to Austin, Nichols & Co. and Poole & Co. that he agreed to take over."

The two contracts that Lingo signed on this occasion—copies of which were to be sent him, but were never sent—were, first, a bought and sold note that Cain wrote on the morning of the 11th of August before leaving Bel Air. It is, with one exception, an exact copy of the bought and sold note executed by E. W. Gray & Sons for the sale of tomatoes to Austin, Nichols & Co., the only difference being that in the body of it appears the name of "R. D. Lingo & Co." as "accepted seller," in substitution for that of "E. W. Gray & Sons" in the Gray contract. It was dated as of Feb. 5th and numbered 6612, the date and number of the Gray contract.

The other paper signed by R. D. Lingo & Co. is in the form of a letter addressed to Wm. E. Robinson & Co., which was written by Cain when at Dagsboro on the visit referred to, and is as follows:

"Bel Air, Md., 8/11/16.

"W. E. Robinson & Co.

"Gentlemen: I agree to pack or furnish and ship tomatoes on contracts made between E. W. Gray & Sons and J. R. Poole Co., Boston, Mass., 1,200 c/s No. 3 std. sanitary tomatoes at 80c. per doz. f. o. b. Dagsboro, Del.

"E. W. Gray & Sons and Austin, Nichols & Co., New York, 1,800 c/s No. 3 std. tomatoes at 80c. per doz. f. o. b. Dagsboro, Del. When packed during season of 1916.

"R. D. Lingo & Co.

"All quotations subject to our confirmation. Jobbers may wire carload orders collect. These prices are based on carload orders, add 2½-5c. per dozen for less than carloads. Samples cheerfully furnished on carload orders or inquiries, but not on less than carloads."

Cain returned to Bel Air with the two papers signed by R. D. Lingo & Co.

The next communication was one from R. D. Lingo & Co. to Wm. E. Robinson & Co., in which he asked them to send to him shipping directions for the tomatoes that were to be shipped out by him upon E. W. Gray & Sons' contracts. In response to that letter, Wm. E. Robinson & Co. wrote as follows:

"W. E. Robinson & Co.,

"Bel Air, Md., Aug. 22nd, 1916.

"Messrs. R. D. Lingo & Co.,

"Dagsboro, Del.

"Gentlemen:

"Referring to the contract No. 7028, covering 1,200 cases No. 3 tomatoes which you have taken over from E. W. Gray & Son, we are enclosing copy of shipping

instructions which were mailed Mr. Gray. You can let these goods go forward at once.

"We are also enclosing shipping instructions on the 600 cases No. 3's for Williams Bros. Company. This shipment can also go forward at once.

"Instructions on contract 6612 will be sent in a few days.

"Yours very truly,
"W. E. Robinson & Company."

The defendants, pursuant to said instructions, shipped 1,200 cases to Poole & Co., of Boston, and 600 cases to Williams Bros. & Co., Wilkes-Barre, Pa., and later upon the direction of W. E. Robinson & Co. shipped to Austin, Nichols & Co. 600 cases on October 10th and a like number of cases on October 16th. He was later requested to ship 600 cases more to Austin, Nichols & Co. which he refused to do claiming that he had fully complied with the provisions of the contract made by them with Wm. E. Robinson & Co. to deliver upon their order 3,000 cases of tomatoes on the contracts made by E. W. Gray & Sons. It was to recover for the losses alleged to have been sustained by the plaintiffs in the defendants' refusal to ship to them said 600 cases of tomatoes that the suit in this case was brought.

In the trial of the case, thirteen exceptions were taken to the rulings of the Court upon the admission or rejection of evidence and one upon its rulings on the prayers.

The plaintiffs offered four prayers. Of these their second and fourth were granted and their first and third refused. The defendants offered three prayers. The first and second were refused and the third granted.

By the defendants' third prayer, the question whether Wm. E. Robinson & Co. were the agents of the plaintiffs in the above mentioned transaction with the defendants was submitted to the jury upon the evidence offered. This is the chief objection urged against the prayer, it being the contention of the plaintiffs that there was no evidence in the case

legally sufficient to go to the jury, tending to show such agency. We, however, cannot agree with the plaintiffs in this contention.

It is said in 4 *R. C. L.,* page 255, that "ordinarily a broker does not act in a dual capacity as a representative of both sides to a negotiation, but only as the agent of the party who first employed him. Once a deal is concluded, however, the law permits him to act as the representative of both parties, if they assent thereto, for the purpose of signing the memorandum sufficient to take the transaction out of the statute of frauds (*Colvin* v. *Williams,* 3 H. & J. 38). In discharging this function, he should make such a memorandum as shall satisfy the requirements of the statute, and deliver a true copy thereof to each of the parties."

The services of Wm. E. Robinson & Co. in connection with the transactions involved in this suit were first sought and obtained by U. H. Dudley & Co., brokers of New York, in an attempt to procure for the plaintiffs the quantity and character of tomatoes desired by them. In their efforts to obtain these tomatoes for the plaintiffs, Robinson & Co. sent or delivered to E. W. Gray & Sons a bought and sold note, signed by them as brokers, with the seller's name left blank in the body thereof, to be filled in by E. W. Gray & Sons, should they accept the offer therein contained. They subsequently accepted the offer and signed the note. But it is not shown by the record that such note or contract of sale was ever accepted by the plaintiffs, unless accepted by them through Wm. E. Robinson & Co., acting as their agents.

When it was discovered by W. E. Robinson & Co. that E. W. Gray & Sons were not to can tomatoes in the year 1916 and would not be able to fill their contracts, they became active in their efforts to get someone to take over the contracts made through them and, with this object in view, they called upon the defendants, who were to operate the canning plant of E. W. Gray & Sons that season; but before leaving his home in Bel Air, their representative Cain, on the day of his visit to Dagsboro, prepared another bought and sold

note for the defendants to sign, if they could be induced to take over the contract made by E. W. Gray & Sons with the plaintiffs. This note was in every respect like the one previously prepared for E. W. Gray & Sons, the seller's name being omitted therefrom, to be filled in by the defendants. It, like the Gray note, was not signed by the buyer, Austin, Nichols & Co., and so far as the record discloses, it too was never accepted by the plaintiffs, unless through Robinson & Co., acting as their agents; nor is it shown by the record that there were any direct dealings between the defendants and the plaintiffs. Two shipments, aggregating 1,200 cases of tomatoes, were made to the plaintiffs, but these were shipped in the name of Wm. E. Robinson & Co., pursuant to the agreement made by Robinson & Co. with the defendants.

In deciding the question of agency, the bought and sold note should not be considered alone, but in connection with the other agreement signed by the defendants on the same day, and the other facts contained in the record. It is true that Lingo in his testimony said that Robinson & Co. were his agents to sell the tomatoes, but in determining what he meant thereby, all of his evidence should be considered in connection therewith. He had previously said that he had agreed with Robinson & Co. to take over the contracts of E. W. Gray & Sons to the extent of 3,000 cases and no more, and would ship them wherever Robinson & Co. ordered them to be shipped, and also said that he never employed Robinson & Co. to do anything, and that they were not his agents.

As we have said, Cain admitted that the defendants refused to take over the contract of Williams Bros. & Co. in addition to the contracts of Austin, Nichols & Co. and Poole & Co., as it would exceed 3,000 cases. Notwithstanding this fact, Robinson & Co., upon the request of the defendants to send them directions for the shipment of the 3,000 cases taken over under Gray's contracts, directed the defendants to ship to Williams Bros. & Co. 600 cases of tomatoes upon E. W. Gray's contract with them, executed by Robinson & Co., which Gray says they were not authorized to make.

When asked why they did it, no satisfactory answer was given. The defendants, however, when asked why they shipped 600 cases to Williams Bros. & Co., when they had refused to take over the contract made with them, replied by saying they had agreed to take over 3,000 cases to be shipped upon the order of Wm. E. Robinson & Co., and that they regarded this direction as a diversion of the tomatoes to Williams Bros. & Co., which as Lingo said, was in accordance with the custom of the business, permitting brokers to change the consignments in such cases.

Without further discussing the evidence, we think it was legally sufficient to go to the jury as tending to show such agency.

The record discloses a special exception to said prayer, but we find no error in the Court's ruling thereon. If the facts, as to which it is claimed no evidence was offered, were improperly inserted therein, the plaintiffs were not injured, as the jury was required thereby to find facts that were not essential to the defendants' right to a verdict. There may be other facts found in the prayer that might well have been omitted therefrom, but we do not think they render it defective.

In view of what we have said in the discussion of the defendants' third prayer, the plaintiffs' first and third prayers were properly refused.

We have examined carefully the thirteen exceptions to the rulings of the Court upon the admission of evidence and find no reversible error in any of them.

In the first exception, Cain was asked if he did not go to Dagsboro for the purpose of getting Lingo to take over the 3,600 cases contracted for by E. W. Gray & Sons. In the second, he was asked if the defendants did not ship the 600 cases of tomatoes to Williams Bros. & Co. In the fourth, if he was not told by Lingo that he would not take more than 3,000 cases of the tomatoes. Fifth, if he did not know that Lingo & Co. did not assume the contract with Williams Bros. & Co. There was no error in the Court's ruling in permit-

ting these questions to be asked. The question in the third exception was a proper one, but if not, the appellants were not harmed by the answer. The sixth, seventh, ninth, tenth, eleventh and twelfth exceptions are to questions asked Lingo and Gray as to the conversation between Lingo and Cain in relation to the latter taking over the contracts of E. W. Gray & Sons and their refusal to fill more than 3,000, etc. These were all proper questions and we find no error in the Court's rulings thereon. Nor was there any reversible error in the Court's ruling on the eighth exception. The thirteenth and last exception was to the admission of the letter of U. H. Dudley & Co. to Wm. E. Robinson & Co. This letter in our opinion was properly admitted.

As we find no error in the rulings of the Court, the judgment of the lower Court will be affirmed.

*Judgment affirmed, with costs to the appellees.*